CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 29 2011

JULIA C. DUDLEY, CLERK
BY: _____
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. HAMILTON, | ) | Civil Action No. 7:11-cv-00203 |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Hon. Jackson L. Kiser |
|     Respondent. | ) | Senior United States District Judge |

Christopher G. Hamilton, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner argues that Virginia Department of Corrections ("VDOC") officials miscalculated time credits that shorten his length of incarceration. Respondent filed a motion to dismiss referencing an affidavit, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I grant respondent's motion to dismiss.

I.

Petitioner is presently incarcerated for three criminal convictions: felony drug conspiracy, felony drug distribution, and misdemeanor damage to county property. On September 21, 2004, he received for his two felony-drug convictions a sentence of ten years' incarceration with one year suspended to run concurrently with a five-year sentence.[1] On November 17, 2004, he received for his misdemeanor conviction a consecutive sentence of ninety days' incarceration with forty-five days suspended. Thus, petitioner's total sentence of active incarceration starting from September 21, 2004, is presently nine years plus forty-five days. Without accounting for any credits, petitioner completes his active felony sentence on September 21, 2013, and his active consecutive misdemeanor sentence on November 5, 2013.

Before petitioner was accepted into the VDOC, petitioner was at the Northwestern Regional Adult Detention Center ("NRADC") and a Georgia jail ("jail"). VDOC officials credited the time petitioner spent at these facilities against his total term of incarceration. The VDOC credited petitioner with 176 days for periods at the NARDC between July 23 and July 24, 2003; July 28 and August 4, 2004; and August 4, 2004, and January 19, 2005. Petitioner also received one days' credit[2] for time spent at the jail on July 27, 2004, bringing the total jail credit to 177 days. Petitioner also earned 13.275 days' "unclassified credit" at a rate of 2.25 days per 30 days of incarceration between July 23 and 24, 2003, and between July 27, 2004, and January 19, 2005, the date he was classified by the VDOC.

Petitioner was accepted into the VDOC on January 19, 2005, to serve the rest of his active sentences, and he was immediately classified as a Level I Earned Sentencing Credit ("ESC"), earning 4.5 days' credit every 30 days.[3] Petitioner stopped earning at the 4.5 days' credit rate on January 19, 2008,[4] when he was reclassified as a Level II ESC, earning the 3 days' credit rate.

Petitioner must complete his active terms of incarceration for his felony sentences before starting his misdemeanor sentence because the misdemeanor sentence was ordered consecutive to his other previously imposed sentences. See Va. Code §§ 19.2-308, 19.2-309 (describing consecutive sentences for felony and misdemeanor convictions). Petitioner can earn Good

---

[1] Therefore, the active sentence for these convictions is effectively nine years' incarceration.
[2] The VDOC credited petitioner with this one day credit after it audited petitioner's credit earning history as a result of this habeas action.
[3] Inmates who committed felony offenses after 1994 are automatically enrolled into the ESC system and earn a rate of time credit every thirty days. Level I inmates receive 4.5 days' credit, Level II inmates receive 3 days' credit, Level III inmates receive 1.5 days' credit, and Level IV inmates do not receive any credit.
[4] The effective date of Level II earning rate was originally incorrectly noted as January 19, 2007, but was subsequently corrected with an effective date of January 19, 2008, as a result of this habeas action.

2

Conduct Allowance ("GCA") credit while serving the forty-five day misdemeanor sentence.[5]  By

petitioner's, respondent's, and my calculations, petitioner has not yet finished his active felony

sentence in order to begin his misdemeanor sentence.

   In his first habeas claim, petitioner argues that the VDOC violates due process by denying

him eighteen days' credit by relying on the incorrect effective date of January 2007 instead of

January 2008.  In his second habeas claim, petitioner argues that the VDOC denied him fourteen

days' credit earned while he was at local facilities before the VDOC classified him.  In his third

habeas claim, petitioner complains that the VDOC will not give him GCA credits when he starts

serving his misdemeanor sentence.  In response to respondent's motion to dismiss, petitioner

recognizes that the VDOC corrected his credits as a result of this habeas action by giving him an

extra day's credit for his jail time in July 27, 2004, and eighteen days' credit by correcting the

Level II ESC effective year from 2007 to 2008.

   After reviewing the petition and respondent's response, I ordered respondent to

supplement his response to more finely detail petitioner's sentences, applicable credits, and the

methodology used to determine petitioner's release date.  Respondent filed his response

supported by an affidavit describing petitioner's sentencing calculations.

   Petitioner responded to this update, stating that he now agrees with all of the VDOC's

calculations of his sentences and his release date.  However, petitioner now argues in a new

claim that he should be released from the VDOC's custody at the end of his felony sentence so he

---

[5] Inmates under the GCA system are categorized into four levels, like in the ESC system, and earn substantially more credit every thirty days than by the ESC system.  GCA Level I inmates receive 30 days' credit, GCA Level II inmates receive 20 days' credit, GCA Level III inmates receive 10 days' credit, and GCA Level IV inmates do not receive any credit.

can serve his misdemeanor sentence in a local facility.  Petitioner believes he can more quickly

serve his misdemeanor sentence in a local facility because of work-release programs,

participation in programs, or home monitoring, which are not available to him if he stays in the

VDOC to serve his misdemeanor sentence.

II.

Federal courts grant habeas relief "only on the ground that [the petitioner] is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  After

a state court addressed the merits of a claim also raised in a federal habeas petition, a federal

court may not grant the petition unless the state court's adjudications of a claim is contrary to, or

an unreasonable application of, clearly established federal law, or based on an unreasonable

determination of the facts.  28 U.S.C. § 2254(d).

Because respondent does not argue that petitioner's state habeas proceedings do not

exhaust his remedies, I assume, without deciding, that his claims have been exhausted for

purposes of 28 U.S.C. § 2254(b)(1)(A).  With that assumption, it is clear that the Supreme

Court of Virginia's dismissal of petitioner's state habeas petition because "[state] habeas corpus

does not lie in this matter" pursuant to Carroll v. Johnson, 685 S.E.2d 647,652 (Va. 2009) did not

constitute an adjudication "on the merits" under 28 U.S.C. § 2254(d).  Boger v. Young, 2010 WL

4861616, at *3, 2010 U.S. Dist. LEXIS 123884, at *9-10 (W.D. Va. Nov. 23, 2010) (Wilson, J.).

 Therefore, I review petitioner's claims de novo.  Hudson v. Hunt, 235 F.3d 892, 895 (4th Cir.

2000).

A.    THE PETITION IS NOT TIME BARRED.

Respondent mentions in a footnote that he believes the petition is untimely because

4

petitioner should have known about the credit discrepancies more than a year before he filed his state and federal habeas petitions.  Habeas petitions filed under § 2254 are subject to a one-year period of limitation.  28 U.S.C. § 2244(d)(1).[6]  Generally, this period begins to run from the date on which the judgment of conviction becomes final.  See 28 U.S.C. § 2244(d)(1)(A).  However, the statute of limitations may also begin on the date on which the factual predicate of the presented claim could have been discovered through the exercise of due diligence.  Id. § 2244(d)(1)(D).

Respondent argues that he should have known of the credits as of January 19, 2006, one year after he was accepted into the VDOC.  This argument fails because respondent fails to explain a basis for knowing of the misapplied jail credits upon his entry into the VDOC. Furthermore, the erroneous ESC Level change occurred in 2008 and could not have possibly been known about in 2006.  Moreover, petitioner has not yet served his misdemeanor sentence, and that claim is not yet ripe; thus, it cannot be untimely.  Petitioner also argues in his response to the motion to dismiss that he only recently became aware of the issue within the past year and that none of previous Legal Updates he received detailed the credits he earned.  Accordingly,

---

[6] The one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1)(A)-(D).

respondent fails to establish that the petition is time barred.

B.   PETITIONER'S FIRST TWO CLAIMS ARE MOOT.

"[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). "Moot questions require no answer," Mo., Kan. & Tex. Ry. v. Ferris, 179 U.S. 602, 606 (1900), and, thus, federal courts "[are] not empowered to decide moot questions or abstract propositions," California v. San Pablo & Tulare R.R., 149 U.S. 308, 314 (1893).

Petitioner's two claims about the effective ESC Level change and the extra-day's jail credit are moot. In his first claim, petitioner argues that the VDOC violates due process by denying him eighteen days' credit by relying on the incorrect effective date of January 2007 instead of January 2008. The VDOC corrected this error after being served with his petition. In his second claim, petitioner argues that the VDOC denied him fourteen days' credit earned while he was at local facilities before the VDOC classified him. The VDOC shows that petitioner received 13.275 days' "unclassified credit" while he was in local facilities. Petitioner acknowledges that these changes were made, and he agrees with the VDOC's calculations for these credits after reading the detailed analysis of his sentences and credits. (Pet'r's Second Resp. (no. 22) 3.) Insofar that petitioner and respondent agree to his current calculations for Claims One and Two, no controversy remains, and these claims are dismissed.

C.   PETITIONER'S THIRD CLAIM IS NOT YET RIPE.

Similarly, the ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).  "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-90 (C.A.D.C. 1982).

　　　Petitioner's third claim that the VDOC has not or will not award him GCA credit is premature.  GCA credit is only available to petitioner when he serves his misdemeanor sentence, which must be served only after completing his felony sentences.  See Va. Code § 19.2-309 (inmate must serve felony misdemeanor sentences before serving misdemeanor sentences).  By everyone's calculations, petitioner has not yet begun serving his misdemeanor sentence, and therefore, he does not yet qualify for any GCA credit.  (Shiflett Aff. (no. 20-1) ¶ 8; Pet'r's Second Reply (no. 22) 3.)  How much, if any, GCA credit the VDOC will give to petitioner for his future misdemeanor sentence is contingent on completing his felony sentences, his classification, and future behavior.  Accordingly, this claim is not yet ripe and is subject to dismissal.

　　　To the extent petitioner claims that the VDOC had not given him the date on which he completes his felony sentence and begins his misdemeanor sentence, the claim does not present a constitutional violation.  (Pet. (no. 1) 38-39; Pet'r's First Reply (no. 18) ¶ 4.)  Insofar as respondent has now provided the date petitioner completes his felony sentence and detailed his earned credits so his felony and misdemeanor sentences are no longer "lumped" together, his claim is also moot.

D.   PETITIONER MAY NOT AMEND HIS PETITION VIA HIS RESPONSE TO PRESENT A NEW, UNEXHAUSTED CLAIM.

In his second reply, petitioner argues for the first time that he should not serve his misdemeanor sentence within the VDOC but should be released from prison to self-report or transferred to a local facility to serve his misdemeanor sentence. Petitioner argues, without referencing legal support, that the VDOC does not have the authority to compute or enforce the misdemeanor sentence. Petitioner cannot rely on his response to respondent's motion that references an affidavit to act as an amendment to raise new claims not related to claims already raised in the petition. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour). See also Fed. R. Civ. P. 15(a) (amendment may granted in this circumstance only by respondent's consent or the court's leave); id 7 (request for court order must be made by motion).

Furthermore, petitioner did not present this new claim to the Supreme Court of Virginia. (Pet'r's State Pet. (no. 16-2) 5-6.) A federal court "may not grant a writ of habeas corpus to petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). See 28 U.S.C. § 2254(b) (mandating exhaustion). The purpose of exhaustion is to give

8

"state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 846 (1999). The exhaustion requirement is satisfied by finding that the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citing Picard v. Connor, 404 U. S. 270, 275-76 (1971)).  Therefore, petitioner must present both the same argument and factual support about whether the VDOC may not incarcerate him on a misdemeanor sentence to the Supreme Court of Virginia prior to filing the claim with a federal court.  Anderson v. Harless, 459 U. S. 4, 6-7 (1982).  Moreover, petitioner does not present any federal constitutional or statutory issue for this argument.  See 28 U.S.C. § 2254(a) (stating federal courts grant habeas relief only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States).  Accordingly, I decline to adjudicate petitioner's new argument that the VDOC may not incarcerate petitioner for his misdemeanor sentence.[7]

### III.

For the foregoing reasons, I grant respondent's motion to dismiss.  Based upon my finding that the petitioner has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a Certificate of Appealability is denied.

---

[7] Even if I were to consider this claim, the VDOC is authorized to hold petitioner until the completion of his sentences, and its Director has the discretion to transfer an inmate to a local facility.  See Va. Code § 53.1-20 (authorizing commitment of convicted persons to custody of VDOC); id. § 53.1-21 (authorizing a prisoner's transfer into and between state and local correctional facilities upon VDOC Director's decision); id. § 19.2-310 (describing how the VDOC shall accept convicts after courts enter criminal judgments).

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to petitioner and counsel of record for the respondent.

**ENTER**: This 20th day of September, 2011.

Senior United States District Judge